If it pleases the court, my name is Martin Philpott, and I have the pleasure of representing Mary Hatch and Keith Henderson, who are here this morning as the appellants. The Rehabilitation Act prohibits disability-based discrimination in federal employment. In a regarded-as case such as this, the plaintiff need only demonstrate that the employer regarded him or her as impaired, whether or not that impairment is believed to limit a major life activity. Although the trial court— I'm sorry, you say the employee need only demonstrate that the employer regarded the person as impaired. There's also a requirement of showing that the adverse actions were motivated by discrimination on account of that perception. It's not enough just that the person be regarded as having this attribute. It does need to be that causal connection, absolutely, in terms of the adverse— On that basis, and that has to be shown. Absolutely, absolutely. And we believe, Your Honor, that the evidence in the record was sufficient to raise a reasonable inference that it was indeed related to the Postal Service's perception of the appellants as being, or regarded as, impaired. So, Powell, let me ask you about the joint complaint, which both of your clients obviously signed. It states, everyone in the department and well beyond have suffered from her—referring to Ms. Litke—irrational and hostile behavior as well. So how can it be that the actions that are being complained of are based upon disability or age, if they concede in their joint complaint that everybody was being treated in this irrational and hostile behavior? Because in terms of the treatment, as is chronicled throughout the lawyers, and so in terms of their drafting the joint complaint, to the extent that they indicated that everyone, to some extent, felt their wrath, they testified in their deposition that there was certainly preferential treatment in the learning and development unit. I don't know if I'm wrong, but at no point, either in the joint complaint, in the leaf slip, or in the response to the letter of warning, do they ever mention age or disability. They do not specifically mention those words. So if they believe that this treatment was because of one or both of those things, why wouldn't that have been mentioned in any of the documentation that they were submitting, complaining about the behavior? Actually, there is additional documentation. And by the way, when I say... What documentation did they claim that it was because of either age or disability? Mary Hatch, in January of 2015, submitted directly to Litkey what is called a Form 3971, which talked about the fact that she was experiencing stress, that she was being subjected to a hostile work environment, and harassment. It doesn't mention... No, it does not. I concede that it does not specifically say discrimination based upon age and or disability. But you could just have a supervisor who's just nasty to everybody, who's harassing everybody, right? That's certainly true, but that's not what the evidentiary record suggests. When the depositions were taken of the appellants, it was clear that the younger individuals within the LDD unit were given preferential treatment, such as when they asked that their workload was too excessive. Those projects were taken away and given to my clients. My clients were required to stay beyond their shift without compensation. My clients were directed not to speak to each other throughout the course of the day when other younger employees within... Clients that deposition, for instance, on the... Your clients were required to stay past their shift. Were they able... Was there evidence proffered that younger individuals were not staying past their shift? Their testimony, the plaintiff's testimony was that they never observed, and we believe that's admissible, and never observed any of the younger individuals ever having to stay beyond their shift. When you refer to younger individuals... Yes. ...people you're talking about, one is 57, right? Litke was 57, the supervisor. Berghaus? 48. 48? 48. Zaske was 43, and Walkden was 53. That seems to me to be extremely weak evidence because it's quite different from calling all the people who were under the same supervisor and having each of them testify, I was never asked, I was never ordered to stay late. I mean, most people don't have that good an opportunity to know whether every other person that they work with has ever been asked to stay late. And they say, we never observed any of the other people being asked to stay late, but that doesn't mean we were keeping tabs on and keeping a careful track and making sure that we had the information. Absolutely, Your Honor. If that was the only... Excuse me. If that was the only shred of evidence that we were relying upon, you would be absolutely right, but it's not. It's a totality of circumstances. What was the further evidence that no one else was asked to stay late? Well, there is no further evidence other than their testimony in that regard, but... It's very weak evidence. It may be inadmissible evidence in the sense that they don't necessarily, they aren't necessarily competent to state whether other people were asked to stay late. But... It's been established that they have firsthand accreditable information on that. Staying late was not the only issue. I know, I'm asking about that issue. Sure, sure. Because you were making a point of that issue, and I'm questioning whether... That was one among others. For instance, the other individuals were never directed that they couldn't speak to each other in the workplace. How do we know that? Because of the sworn testimony of the appellants who observed, who talked to their supervisor directly and talked to each other in terms of their coworkers. But they had firsthand knowledge that no other workers were told, you're not allowed to talk to each other? Yes, and they testified as such. Okay. So it's not just a matter of who stayed late and was not compensated. It's a totality of circumstances in terms of the overall workload. And my time is up. I'm going to reserve two minutes on rebuttal. Okay. Good morning. May it please the Court. My name is Carolyn Ikari. I'm an Assistant U.S. Attorney in the Civil Division in Hartford, Connecticut. The Postal Service is entitled to summary judgment on all three of the plaintiff's claims because well-settled principles of black-letter employment law govern and apply in this case. First, with respect to EEO retaliation, it's well-settled that the retaliation needs to be for activity that comes within the ambit of the anti-discrimination statute. It's in the statute itself, actually. And in this case, when the plaintiffs have submitted the joint complaint, also this leaf slip and one other memorandum, that are only generic complaints of a harsh work environment, that is not enough to bring this case into the ambit of the anti-retaliation provisions of the EEO law. Second, with respect to age discrimination, it's well-settled that when trying to show age discrimination, certainly in the absence of direct evidence, as is in this case, Is it your position that the point you just mentioned is enough to end the case? Does that dispose of the entire case? That there is no direct evidence, Your Honor? No, that by virtue of the fact that they didn't complain to the EEOC, they didn't complain during their administrative exhaustion of a protected ground, that they don't have a justiciable claim. They have only a claim that's permitted by statute. Yes, their claims of retaliation fail, and that is two of the six counts. You're saying it's just as if they had never made a complaint to the EEOC. Making a complaint that doesn't complain of a protected ground, but you go to the EEOC and you say, I'm being treated horribly by my boss, I'm being subjected to a hostile work environment, my boss is horrible to me, does all kinds of terrible things, but you never mention any ground protected by Title VII, by ADA, by rehab, or anything like that, then you haven't exhausted. Is that your position? Yes, that the complaint does not constitute prior protected activity under the EEO laws. Now, I would draw a distinction. In this case, the complaint of conduct came before the EEO complaint, the formal EEO complaint that underlies this case. The plaintiff is correct that you don't have to file a formal charge, the specific piece of paper, notice of discrimination, or complaint of discrimination, in order to have engaged in prior protected activity. The question in this case is whether or not the leaf slip, the joint complaint, and Mrs. Hatch's response to her letter of warning, which are not EEO complaints, whether or not that constitutes prior protected activity, and for the reasons that Your Honor just articulated, that those complaints are generic, don't have anything that comes within the ambit of the anti-discrimination statutes, then they are not prior protected activity. And therefore, plaintiff's retaliation claims cannot proceed on that basis. That first argument went to the retaliation claim, not the other, just the retaliation claim. Yes. Second, with respect to the age discrimination claims, particularly when there is no direct evidence of discriminatory animus, and the plaintiffs are relying on a comparison between themselves and other persons, it's well settled that the comparators need to be similarly situated in all material respects, including being subject to the same performance considerations. And in this case, the plaintiffs themselves concede that their co-workers were junior to them in experience and skill. It's the plaintiffs' own report that the bulk of the institutional knowledge lay with the plaintiffs, and that because their co-workers were newer, and... It seems to me to be one of your weaker arguments, because I accept the proposition that if the circumstances of the greater experience and capability of the person who is complaining, if those circumstances make it appropriate to give that person more work than is given to a junior, then evidence that merely that the person is given more work than a junior does not show discrimination. They're not comparable. But if they're saying, we, unlike our juniors, were given work beyond our capability of handling, that accepting that we were justifiably given more work than others, that didn't justify giving us so much work that we couldn't possibly do it. And so the thing they're complaining about is not that they were given more work than others, but that they, unlike the others, were given an intolerable amount, an undoable amount of work. Your Honor, I don't think that difference in degree carries the probative value that the plaintiffs would need it to, to survive summary judgment. They also claim things completely unrelated to the nature of the work. They complain that, as you've heard, that they weren't allowed to talk to people, they were being berated, so it has nothing to do with the job assignments. Is that right? Yes. I can address those other instances of differential treatment that the plaintiffs are outlining. For example, with respect to leaving early and being permitted to leave early, or actually not being permitted to leave on time, is probably a more accurate way of saying it. I'll direct the Court to Joint Appendix 714. The plaintiffs concede, we discussed this in our brief, the plaintiffs concede, you know, their shift ended at 1.30 in the afternoon. Their shift ended before anyone else's. And so they literally weren't around, and as I think Your Honor indicated, they don't have a, there's no foundation for them to... Depends how long they were required to stay late. Sure, but there's nothing in the record in that regard. A lot of these differential treatment, actually all of the differential treatment allegations are really based on surmise. So that's with respect to leaving early, but it's also with respect to being able to take leave or being challenged on taking leave. I'll, we discussed this in our brief, and I'll direct the Court to Joint Appendix at 493, when Ms. Hatches, I was asking Mrs. Hatches about this, and she was only able to name one employment, one, sorry, one coworker, Mr. Burgess, no one else, just Mr. Burgess. And then she says, well, he took a lot of annual leave, but then she conceded, well, she didn't know what kind of leave he was using. And then it becomes clear that plaintiffs don't even know whether or not he was on leave. He just physically wasn't in the office to their observation. Again, this is at Joint Appendix 493, the answer from the plaintiffs, you know, how did you know about this differential treatment with respect to leave? And the answer was because he was gone, meaning Mr. Burgess wasn't around. And Mr. Henderson said something similar, Joint Appendix 650, he says, well, because other people would be gone from the office. Again, that's just not, you know, one instance of other people, it's not, it doesn't have the prohibitive... How about the prohibition on speaking with each other in the workplace? You know, the record is, the record is silent on whether or not that was something that Ms. Lidke directed others to do or not. We just don't know. And similarly, with respect to the... What do you mean by the record is silent? I understood from counsel that the plaintiffs asserted that other people didn't receive such directions not to speak to each other. The question seemed to me to be whether that's competent evidence or even if it's competent to achieve something, it's very, very weak because the plaintiffs wouldn't necessarily know. But are you saying that that is something in the record, isn't it? Or is it not there, is there no such thing in the record? It's both. First of all, as I stand here, I'm not sure where that is in the record. But secondly... They say in the joint complaint that they were told they couldn't talk and others were allowed to. But others were allowed to, right. But we don't know if Ms. Lidke ever gave a direction to other co-workers not to converse with each other. You're saying they didn't have competence to know whether such a direction had ever been given to somebody else. Well, and that's what I mean by the record is silent. We just don't know. But even if that were true, I just don't think that that has enough probative value to show the difference in treatment that would ultimately enable a rational, a reasonable fact finder to conclude that what happened was based on age or any other animus. I see my time has expired if there are no further questions from the court. Thank you. Very quickly, Your Honours. With respect to the issue of not speaking, there is competent evidence in the record. Look at the deposition testimony of Mr. Cullen as well as Ms. Lidke even admitted that she, from time to time, didn't want Hatch and Henderson speaking to each other. She wanted them working, in addition to the testimony of my client. Wait, that's contesting the motive, but it's not addressing whether there were other people who she directed not to talk to each other. There was some reference that the record was silent. A record being silent isn't helpful to your client. What is helpful, Your Honour, would be for this court to take the opportunity to look at the four discreet, informal, if you will, complaints that were made by my clients, the joint complaint, the 3971, the cover letter to the joint complaint from the NAPPS president that refers specifically to a hostile workplace complaint, and Hatch's response to the letter of warning issued to her by Lidke. Those are, we would respectfully submit, protected activity, which gives rise, gives support to our claim that the appellants were retaliated against. All the notice need do is to put the employer on notice that some type of discriminatory conduct is going on. These did, and it would be helpful for the court to clarify. Your argument is by saying hostile work environment, the employer is on notice that some protected ground is at issue? Absolutely, absolutely, and we think it's important in terms of the continued efficacy of the anti-retaliation statutes that there's a clarification as to what constitutes protected activity, both formal and informal. We think that there's sufficient evidence in the record to warrant a vacating of the grant of the motion for summary judgment. We ask that the case be remanded back to the trial court. Speaking for myself alone, not in any way representing the opinions of anybody else, it seems to me as if your clients have a very, very sympathetic case in the sense that it appears that they were subjected to extremely terrible working circumstances by their supervisor, but I'm not sure that they have much of a case of demonstrating that that amounts to proof of a federal offense of prohibited discrimination on the grounds of perceived disability or age because their evidence, no matter how strong their evidence is of horrible treatment by their supervisor Lipke, that's not enough to make a federal case of discrimination. I understand, Your Honor, but I would only ask that you bear in mind that my clients, when they were going through this hellish situation, had not retained counsel and did not specifically avail themselves of the law so that they could properly formulate their complaints. Thank you so much for your time. Thank you both, and we will take the matter under advisement. Well argued.